Austin C. Yost (034602)
Kelleen Mull (036517)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5485
ayost@cblawyers.com
kmull@cblawyers.com

Lindsay Herf (027554)
**ARIZONA JUSTICE PROJECT**
4001 North 3rd Street, Suite 401
Phoenix, Arizona 85012
T: (602) 844-1216
lindsay.herf@azjusticeproject.org

Karen Singer Smith (033494)
**MITCHELL STEIN CAREY CHAPMAN PC**
2600 North Central Avenue, Suite 1000
Phoenix, Arizona 85004
T: (602) 358-0290
karen@mscclaw.com

*Attorneys for Plaintiff*
*Donald Huggins*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Donald Huggins, | No. CV-25-01991-PHX-ROS (DMF) |
| Plaintiff, | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Ryan Thornell, Director, Arizona Department of Corrections, Rehabilitation & Reentry, | |
| Defendant. | |

**Introduction**

Plaintiff Donald Huggins brought this 42 U.S.C. § 1983 action against Defendant Ryan Thornell, in his capacity as Director of the Arizona Department of Corrections, Rehabilitation & Reentry ("ADCRR"), to seek prospective injunctive and declaratory relief requiring Director Thornell to implement Mr. Huggins's final and enforceable sentence.

In 1997, Mr. Huggins was sentenced on Count 2 (a drug-related offense) under A.R.S. § 13-3410(B) to "life with no release until [he] has served 25 years" in prison "unless [his] sentence is commuted" followed by a community supervision term. He was also sentenced on Count 7 to a five-year imprisonment term followed by a community supervision term. The sentence on Count 7 runs consecutively to the sentence on Count 2. Mr. Huggins—now 67 years old—has served over 25 years in prison under his sentence on Count 2. He is thus eligible for "release" under A.R.S. § 13-3410(B) and his sentence of imprisonment. Under Arizona law, this means that he is eligible for parole or, in the alternative, entitled to community supervision. Both forms of release would provide Mr. Huggins a meaningful chance to serve his sentence on Count 7. Yet Director Thornell refuses to certify Mr. Huggins as eligible for parole and refuses to implement his entitlement to community supervision, essentially morphing his sentence on Count 2 to natural life. Director Thornell is thus violating a bedrock principle underlying our criminal justice system: ADCRR—an executive agency—has no authority to ignore, rewrite, or defy criminal sentences imposed by courts. Mr. Huggins should be granted summary judgment.

**Background**

**I.    In 1993, the Arizona Legislature generally abolished parole for adults who commit felony offenses and replaced it with community supervision.**

In 1993, the Arizona Legislature "enacted its truth-in-sentencing law" and generally "eliminated parole for crimes committed on or after January 1, 1994." *Viramontes v. Att'y Gen.*, No. CV-16-00151, 2021 WL 977170, at *1 (D. Ariz. Mar. 16, 2021). The Legislature generally abolished parole by amending A.R.S. § 41-1604.09—a statute in Title 41 (titled "State Government"), Chapter 11 (titled "State Department of Corrections"), governing the ADCRR

Director's duties in connection with prisoners' parole eligibility classifications and certifications—to add a negative inference that parole is unavailable for people who commit felony offenses on or after January 1, 1994. *See* A.R.S. § 41-1604.09(I)(1) ("This section applies to . . . [a] person who commits a felony offense before January 1, 1994.").

The Legislature "replaced [parole] with a system of 'earned release credits'" and community supervision. *State v. Vera*, 235 Ariz. 571, 575 ¶ 17 (App. 2014) (citation omitted). Under this system, eligible prisoners can earn release credits, which generally allow prisoners to be released from prison "after serving approximately 85% of [their] sentence[s]." *State v. Coffelt*, No. 1 CA-CR 17-0303, 2018 WL 2976246, at *1 ¶ 6 n.3 (Ariz. Ct. App. June 14, 2018).

When a prisoner who committed a felony offense reaches the "earned release date" (for a prisoner who earns enough release credits) or "sentence expiration date" (for a prisoner who serves the full imprisonment term), the ADCRR Director must generally "release[]" the prisoner to serve a community supervision term, A.R.S. § 41-1604.07(E), or any consecutive sentence. A.R.S. § 41-1604.07(J). [*See also* SOF ¶¶ 1-2 (ADCRR Department Order Manual 1002 adopts a similar interpretation)] "Community supervision" is that "portion of a felony sentence" that is "served in the community after completing a period of imprisonment or served in prison in accordance with § 41-1604.07." A.R.S. § 13-105(5). Under A.R.S. § 13-603(I), a community supervision term "shall be for a period equal to one day for every seven days" of the sentence imposed and "shall be served consecutively to the actual period of imprisonment."

While earned release credits and community supervision straightforwardly apply to determinate sentences, they have "no ready application" to "indeterminate life sentence[s]." *Vera*, 235 Ariz. at 575 ¶ 17 & n.8. For this reason, ADCRR admitted that the difference between parole and community supervision is "semantics" as applied to life sentences. [SOF ¶¶ 3-4]

## II.    Confusion about parole availability pervaded Arizona's judicial system for decades.

Although the Legislature amended a statute in Title 41 to "provide that an adult who commits a felony offense is generally ineligible for parole," *State v. Anderson*, 257 Ariz. 226,

229 ¶ 3 (2024) (citing A.R.S. § 41-1604.09(I)), it retained references to parole in Title 13 (titled "Criminal Code") as a potential form of "release" for prisoners in ADCRR's custody. *See, e.g.*, A.R.S. § 13-4401(14) ("'Post-conviction release' means parole, work furlough, community supervision, probation . . . , home arrest or any other permanent, conditional or temporary discharge from confinement in the custody of [ADCRR] . . ."). It also later added references to parole in other statutes in Title 41 that imply the same point. *See, e.g.*, A.R.S. § 41-1604.08(A) (ADCRR "shall assign any person who is in [ADCRR's custody] and who was convicted of a violation of § 13-705 to a global position monitoring system on the person's release on parole, community supervision, work release or other conditional or temporary release"). And the Arizona Board of Executive Clemency ("ABOEC") likewise retained references to parole in its policies for a similar purpose. [*See* SOF ¶ 5 (Ariz. Admin. Code Title 5, Chapter 4, R5-4-101(8)) ("'Release' means parole, home arrest, work furlough, or community supervision.")]

These inconsistencies produced "pervasive confusion" for decades by "both bench and bar about parole availability after it was abolished in Arizona." *Anderson*, 257 Ariz. at 229 ¶ 2. This "systemic failure to recognize the effect of the change in the law regarding parole" manifested in trial and appellate courts. *Id.* at 232 ¶ 25. Trial courts since 1994 "interchangeably used the words 'parole' and 'release' when imposing non-natural-life sentences." *Id.* at 231 ¶ 17. This is evidenced by undisputed facts showing that hundreds of sentencing minute entries and transcripts inconsistently used the words "parole" and "release" during sentencing proceedings for people who were convicted of crimes for conduct occurring on or after January 1, 1994. [SOF ¶ 6] And appellate courts published a host of decisions stating that "parole was still available for those convicted of felonies with the possibility of release" after serving 25 years in prison. *Anderson*, 257 Ariz. at 231 ¶ 17. [*See also* Doc. 1 ¶ 16 (collecting cases)] The "Arizona reporter is [thus] full of cases in which the sentencing judge mistakenly thought that he or she had discretion to allow parole." *Jessup v. Shinn*, 31 F.4th 1262, 1267 n.1 (9th Cir. 2022) (citing *Chaparro v. Shinn*, 248 Ariz. 138, 139 ¶ 1 (2020); *Vera*, 235 Ariz. at 572 ¶ 2).

III.    **Mr. Huggins was sentenced on Count 2 to "life with no release until [he] has served 25 years" in prison "unless [his] sentence is commuted" followed by a community supervision term and received a consecutive sentence on Count 7.**

In or around April 1997, Mr. Huggins was convicted by a jury of various drug-related offenses for events that occurred in 1995. He was convicted of (1) possession of a dangerous drug for sale (methamphetamine), (2) transportation of a dangerous drug for sale (methamphetamine), (3) possession of a narcotic drug (cocaine), (4) transfer of a narcotic drug (cocaine), (5) participation in a criminal syndicate, and (6) manslaughter. [SOF ¶ 7] The relevant convictions are for transfer of a narcotic drug ("Count 2") and manslaughter ("Count 7").

The Gila County Probation Department prepared a presentence report for Mr. Huggins's sentencing. It recommended that, for most counts, Mr. Huggins be ordered to serve "the presumptive term[s]" of imprisonment. [*Id.* ¶ 8] For Count 2, it recommended that Mr. Huggins be ordered to serve "the term of 25 years" in prison. [*Id.*]

The Gila County Superior Court then sentenced Mr. Huggins. Under Count 2, the Court entered this sentence: "DEPARTMENT OF CORRECTIONS, LIFE WITH NO RELEASE UNTIL Defendant HAS SERVED 25 YEARS, unless sentence is commuted." [*Id.* ¶ 9] And under Count 7, the Court entered this sentence: "DEPARTMENT OF CORRECTIONS, 5 YEARS, PRISON." [*Id.*] The Court also ordered "AS TO EACH SENTENCE":

- "COMMUNITY SUPERVISION: IT IS ORDERED that after Defendant is released from custody he will be subject to community supervision for a period of time as set forth in A.R.S. §§13-603(I).";

- "PAYMENT OF FINES: IT IS HEREBY ORDERED that the Defendant make payments on the fines ordered herein in regular monthly installments of $100.00, commencing on the first day of the second month after his release from [ADCRR], and on the first day of each month thereafter until paid in full.";

- "IT IS ORDERED that the Defendant shall avoid contact with or use of illegal drugs, dangerous drugs and narcotics except those prescribed by a physician. The

- 4 -

Defendant shall not possess drugs on his person, nor in his vehicle or home, and shall submit to drug testing as directed."; and

• "FURTHER ORDERED the Gila County Sheriff and/or [ADCRR] is directed to notify the Clerk of the Superior Court of Gila County of the Defendant's release date from secured custody; and of the Defendant's mailing address at time of release from secured custody; and further, should the Defendant move, he is directed to notify the Clerk of the Court, 1400 East Ash Street, Globe, AZ 85501, within ten (10) days of the Defendant's change of address." [*Id.* ¶ 10].

The Court ordered that the sentence for Count 7 (a five-year imprisonment term followed by a community supervision term) runs consecutively to the sentences for Count 2 ("life with no release until [Mr. Huggins] has served 25 years" in prison "unless [his] sentence is commuted" followed by a community supervision term) and the other counts. [*Id.* ¶ 11][1]

The Court also expressed its opinion under A.R.S. § 13-603(K) (now codified at A.R.S. § 13-603(L)) that Mr. Huggins's sentence under Count 2 is "clearly excessive" in a special order to ABOEC. [*Id.* ¶¶ 13-14] The Court emphasized, among other things, that (a) jurors believed that Mr. Huggins's conduct, as compared to other individuals' conduct, "was the same or similar[,] yet his sentence is grossly more harsh"; (b) many witnesses at trial were Mr. Huggins's "immediate associates who also dealt in drugs," and "they universally received guarantees of probation (or less) or a judge with sentencing discretion granted them probation"; and (c) Mr. Huggins's "lifestyle was the same or similar to that of the others who, at [Mr. Huggins's trial], admitted dealing drugs and who received probation or less." [*Id.* ¶ 14]

Mr. Huggins appealed his convictions and sentences. The Arizona Court of Appeals affirmed, and the Arizona Supreme Court denied review. *See State v. Huggins*, No. 2 CA-CR

---

[1] The convictions for the other counts are irrelevant because Mr. Huggins has served the imprisonment terms to which he was sentenced on those counts. [SOF ¶ 12]

2008-0280, 2009 WL 765491, at *1 ¶ 1 (Ariz. Ct. App. Mar. 24, 2009) ("We affirmed Huggins's convictions and sentences on appeal."). The State did not appeal or cross-appeal on any issue.

## IV.   The Arizona Board of Executive Clemency repeatedly refused to recommend that the Governor commute Mr. Huggins's sentence on Count 2.

The Gila County Superior Court's "special order" under A.R.S. § 13-603(K) (now codified at A.R.S. § 13-603(L)) allowed Mr. Huggins to petition ABOEC for a commutation on his sentence under Count 2 within 90 days from when he was committed to ADCRR's custody. [SOF ¶ 13] So, in or around July 1997, Mr. Huggins applied for a commutation on his sentence under Count 2. [*Id.* ¶ 15] ABOEC denied Mr. Huggins's application. [*Id.*]

Then, in or around February 2016, Mr. Huggins again applied for a commutation on his sentence under Count 2. [*Id.* ¶ 16] ABOEC held a Phase I hearing and passed Mr. Huggins's application to Phase II of its process. [*Id.*] But at the Phase II hearing, ABOEC questioned whether Mr. Huggins was in fact eligible for a commutation, suspended the hearing, and then determined that Mr. Huggins was "ineligible" for a commutation on his sentence under Count 2 until August 2023—*i.e.*, until he had served 25 years in prison on that sentence. [*Id.*][2]

In or around September 2023, Mr. Huggins yet again applied for a commutation on his sentence under Count 2. [*Id.* ¶ 17] Mr. Huggins stressed, among other things, that (a) he used drugs for only about 2.5 years in his life (he is now 67 years old); (b) he has family members who would support him in the community, including his mother, sister, brother in law, grandson, and nephew; (c) he learned trades in prison, including concrete and painting, that he could apply to earn income; and (d) he has had no disciplinary violations since 2005. [*Id.*] ABOEC yet again

---

[2] ABOEC's interpretation is inconsistent with A.R.S. § 13-3410(B) and Mr. Huggins's sentence. Section 13-3410(B) says that a person "shall be sentenced to life imprisonment and is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis until the person has served not less than [25] years [in prison] <u>or</u> the sentence is commuted." (Emphasis added). So too, Mr. Huggins was sentenced on Count 2 to "life with no release until [he] has served 25 years" in prison "<u>unless</u> [his] sentence is commuted." [SOF ¶ 9 (emphasis added)] Both made Mr. Huggins eligible for commutation before he served 25 years in prison.

1    denied Mr. Huggins's application. [*Id.*] It did so in an ex parte hearing in which Mr. Huggins

2    could not participate that lasted less than four minutes. [*Id.*]

3    **V.    Despite Mr. Huggins's requests, Director Thornell refuses to certify Mr. Huggins as
        eligible for parole and refuses to implement his entitlement to community
4        supervision on Count 2, preventing him from serving his sentence on Count 7.**

5        Mr. Huggins has served over 25 years in prison under his sentence on Count 2. [*Id.* ¶ 18]

6    He is thus eligible for "release" under A.R.S. § 13-3410(B) and his sentence of imprisonment.

7    This means that he is eligible for parole on Count 2 or, in the alternative, entitled to community

8    supervision. Yet despite Mr. Huggins's reasonable requests, Director Thornell refuses to certify

9    Mr. Huggins as eligible for parole and refuses to implement his entitlement to community

10    supervision, preventing him from serving his consecutive sentence on Count 7. [*Id.* ¶ 19]

11                                   **Argument**

12        Mr. Huggins asserts two claims against Director Thornell: (1) procedural due process

13    violations [Doc. 1 (Count I) ¶¶ 57-69] and (2) substantive due process violations [*id.* (Count II)

14    ¶¶ 70-81]. This Court should grant summary judgment for Mr. Huggins on both claims.

15    **I.    Under A.R.S. § 13-3410(B) and his sentence of imprisonment, Mr. Huggins is eligible
        for parole on Count 2 or, in the alternative, entitled to community supervision.**

16
       **A.    Section 13-3410(B) authorizes Mr. Huggins's release on parole on Count 2 or,
           in the alternative, requires his release on community supervision.**
17

18        Mr. Huggins was sentenced on Count 2 under A.R.S. § 13-3410(B). Section 13-3410(B)

19    "enhance[s] the sentence resulting from conviction for certain enumerated drug offenses." *State*

20    *v. Nichols*, 201 Ariz. 234, 237 ¶ 12 (App. 2001). When it applies, it provides that a person "shall

21    be sentenced to life imprisonment and is not eligible for suspension of sentence, probation,

22    pardon or release from confinement on any basis until the person has served not less than [25]

23    years [in prison] or the sentence is commuted." A.R.S. § 13-3410(B).

24        The Gila County Superior Court sentenced Mr. Huggins on Count 2 to "life with no

25    release until [he] has served 25 years" in prison "unless [his] sentence is commuted" followed

26    by a community supervision term. [SOF ¶¶ 9-10] Mr. Huggins has served over 25 years in prison

under Count 2. [*Id.* ¶ 18] He is thus eligible for "release" under A.R.S. § 13-3410(B). That raises the question: What forms of "release" is Mr. Huggins eligible for under A.R.S. § 13-3410(B)?

When this Court interprets a state statute, it must "appl[y] [that] state's rules of statutory construction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 746 (9th Cir. 2013). In applying those rules, this Court can also "consult how a state court" interprets "its own State's laws" because of the "respect due state courts as the final arbiters of state law in our federal system." *United States v. Taylor*, 596 U.S. 845, 859 (2022). Applying Arizona's statutory interpretation principles, Mr. Huggins is eligible for parole on Count 2 or, in the alternative, entitled to community supervision. Both are forms of "release" under A.R.S. § 13-3410(B).

1.      When a statute's "plain language" is "clear and unambiguous," Arizona courts "give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017). "Absent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions." *In re Drummond*, 257 Ariz. 15, 18 ¶ 7 (2024). Here, "release" in A.R.S. § 13-3410(B) is undefined, but its ordinary meaning is broad: "The action of freeing or the fact of being freed from restraint or confinement." *Release*, Black's Law Dictionary (12th ed. 2024). This Court should thus interpret "release" as a general term meaning discharge from imprisonment, including more specific terms like parole and community supervision.

2.      This reading is reinforced by the "context" in which "release" appears. *Glazer v. State*, 244 Ariz. 612, 614 ¶ 10 (2018) (citation omitted). "Release" is a catch-all term at the end of a list, following "suspension of sentence, probation, [and] pardon." A.R.S. § 13-3410(B). Words "grouped in a list should be given related meanings." *State ex rel. Brnovich v. City of Phoenix*, 249 Ariz. 239, 245 ¶ 23 (2020) (citation omitted). This Court should thus interpret "release" in A.R.S. § 13-3410(B) broadly to cover any unlisted supervised release forms that are like the listed term "probation" (including parole and community supervision) and any unlisted forms of executive clemency that are like the listed term "pardon." This interpretation honors

1   the principle requiring courts to give meaning to "every word and provision so that no word or

2   provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).

3          3.      Arizona courts consider "statutes that are *in pari materia*—of the same subject or

4   general purpose." *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). Here, other statutes

5   define "release" broadly to cover parole and community supervision. *See, e.g.*, A.R.S. § 13-

6   4401(14) ("'Post-conviction release' means parole, work furlough, community supervision,

7   probation . . . , home arrest or any other permanent, conditional or temporary discharge from

8   confinement in the custody of [ADCRR] . . ."); A.R.S. § 41-1604.08(A) (ADCRR "shall assign

9   any person who is in [ADCRR's custody] and who was convicted of a violation of § 13-705 to

10  a global position monitoring system on the person's release on parole, community supervision,

11  work release or other conditional or temporary release."). ABOEC policies adopt a similar

12  interpretation. [*See* SOF ¶ 5 (Ariz. Admin. Code Title 5, Chapter 4, R5-4-101(8)) ("'Release'

13  means parole, home arrest, work furlough, or community supervision.")]

14         4.      Although the Legislature generally abolished parole in 1993 by amending A.R.S.

15  § 41-1604.09, interpreting "release" in A.R.S. § 13-3410(B) to exclude parole would make that

16  statute "unintelligible." *State ex rel. Brnovich*, 249 Ariz. at 247 ¶ 35. "Release" in A.R.S. § 13-

17  3410(B) cannot include only forms of executive clemency or that word would be meaningless.

18  Section 13-3410(B) provides that a person is ineligible for "release from confinement on any

19  basis until the person has served not less than [25] years [in prison] or the sentence is commuted."

20  The clause "<u>or</u> the sentence is commuted" implies that the prisoner is eligible for commutation

21  before serving 25 years in prison. (Emphasis added). So, upon serving 25 years in prison,

22  "release" must mean some mechanism besides "commutation." Nor can "release" in A.R.S. §

23  13-3410(B) only mean "pardon." Section 13-3410(B) separately lists a "pardon" as a form of

24  release that a person is ineligible to receive for 25 years. For the word "release" to have meaning,

25  it must include some mechanism besides "pardon." Parole and community supervision are the

26  only other mechanisms available. To interpret the statute otherwise would empty "release" of

- 9 -

1   any meaning, rendering it "superfluous." *Nicaise*, 245 Ariz. at 568 ¶ 11. Section 13-3410(B)—

2   as a "specific statute[]"—thus "control[s] over" A.R.S. § 41-1604.09—as a "general statute[.]"

3   *Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.*, 181 Ariz. 95, 100

4   (App. 1994). But even if A.R.S. § 41-1604.09 excluded parole as a form of "release," it would

5   not exclude community supervision. After all, the Legislature's purpose in establishing

6   community supervision was to "provide some form of supervision after release for <u>all</u> prisoners."

7   Cami Byrd, Criminal Code Revision, 26 Ariz. St. L.J. 341, 344 (1994) (emphasis added). And

8   ADCRR admitted that it treats parole and community supervision as "one and the same" as

9   applied to life sentences because any difference is mere "semantics." [SOF ¶¶ 3-4]

10      5.      Arizona courts evaluate a proposed statutory interpretation's "effects and

11   consequences." *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016).

12   Interpreting "release" in A.R.S. § 13-3410(B) to include parole and community supervision, not

13   only forms of executive clemency, would provide prisoners with a meaningful chance at release.

14      •      The criteria for parole are significantly different than those for

15   commutation. A prisoner eligible for parole needs to show that "there is a substantial

16   probability that the applicant will remain at liberty without violating the law and that the

17   release is in the best interests of the state." A.R.S. § 31-412(A). An applicant seeking

18   commutation, on the other hand, must show that there is "a substantial probability that

19   when released the offender will conform the offender's conduct to the requirements of

20   the law" and that there is "clear and convincing evidence that the sentence imposed is

21   clearly excessive." A.R.S. § 31-402(C)(2).

22      •      Decisions to grant or deny parole are made by ABOEC without any review

23   by the Governor. *See* A.R.S. § 31-412(A). For commutation, though, final decisions are

24   made by the Governor—only after ABOEC first recommends it (after completing its own

25   two-step process). *See* A.R.S. § 31-402(A), (C).

26

• Prisoners who are denied release on parole at the end of a parole hearing are automatically re-certified within six months to one year. *See* A.R.S. § 41-1604.09(D), (G). But prisoners who are denied commutation must usually wait five to ten years before applying again. *See* A.R.S. § 31-403(A)–(C).

• The differences between parole and commutation have, not surprisingly, produced drastically disparate release rates in Arizona. According to ABOEC's 2024 report, ABOEC conducted 240 hearings for prisoners who were eligible for parole under A.R.S. § 31-412(A) and granted relief in 78 cases (~32.5%). [SOF ¶ 20] ABOEC also conducted 75 hearings for prisoners who were eligible for parole under A.R.S. § 31-412(B) and granted relief in 14 cases (~18.67%). [*Id.*] In comparison, while ABOEC conducted 199 commutation Phase I hearings and 11 commutation Phase II hearings,[3] the Governor granted only six commutations. [*Id.*] The six commutation grants from the 204 prisoners who had commutation hearings produced a commutation grant rate of ~2.9%. [*Id.*] *See also, e.g.*, *Graham v. Florida*, 560 U.S. 48, 70 (2010) (describing executive clemency as a "remote possibility"); *Solem v. Helm*, 463 U.S. 277, 303 (1983) (similar); *Viramontes*, 2021 WL 977170, at *2 ("Unlike parole, the chances of obtaining release through executive clemency are slim."); *id.* at *2 n.2 (citing 2013 statistics in which parole was granted in 24% of cases while commutation was granted in 0.005% of cases).

• Prisoners eligible to be released on community supervision also have a meaningful chance at release. When a prisoner reaches the "earned release date" (for a prisoner who earns enough release credits) or "sentence expiration date" (for a prisoner who serves the full imprisonment term), the ADCRR Director must "release[]" the prisoner to serve a community supervision term unless (a) the prisoner refuses to "agree

---

[3] The 11 commutation Phase II hearings included five hearings in which a Phase I hearing was not held because of the nature of the commutation request (namely, Imminent Danger of Death Commutation or 603(L) Commutation). [*Id.* ¶ 20]

to abide by the conditions of supervision," (b) the prisoner "fails to achieve functional literacy at an eighth grade literacy level," or (c) the ADCRR Director believes that the prisoner "may be a sexually violent person." A.R.S. § 41-1604.07(E), (F), (I). When a prisoner has a consecutive sentence, the ADCRR Director must "release" the prisoner to serve that sentence, though the Director may rescind "the release to any consecutive term if the prisoner fails to adhere" to ADCRR's rules. A.R.S. § 41-1604.07(J).

6.      Arizona courts interpret statutes to "avoid constitutional difficulties" and "serious constitutional questions." *State v. Gomez*, 212 Ariz. 55, 60 ¶ 28 (2006). Under the void-for-vagueness doctrine, the Government violates the Fourteenth Amendment's Due Process Clause when it takes away "someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." *Id.* at 596. Here, interpreting "release" in A.R.S. § 13-3410(B) broadly to include parole and community supervision avoids constitutional difficulties. Conversely, a narrow interpretation limiting "release" to only forms of executive clemency would raise serious constitutional questions and difficulties under the void-for-vagueness doctrine because A.R.S. § 13-3410(B) would have failed to provide fair notice of its potential punishments. That's all the more true given the widespread confusion about the forms of release available to prisoners like Mr. Huggins sentenced to non-natural-life sentences. [*See* Doc. 1 ¶¶ 6-18] *See also, e.g.*, *Johnson*, 576 U.S. at 598-602 (the Armed Career Criminal Act's residual clause, under which a person could be sentenced to "prison for 15 years to life," is unconstitutionally vague because, among other things, it produces "more unpredictability and arbitrariness than the Due Process Clause tolerates," as shown by the "pervasive disagreement" among federal courts about its meaning); *Isaacson v. Brnovich*, 610 F. Supp. 3d 1243, 1254 (D. Ariz. 2022) (A.R.S. § 1-219 is unconstitutionally vague because a law that requires an "extraordinary effort to decipher fails to

give ordinary people fair notice of the conduct it permits and proscribes" and that is especially so when "it is entirely unclear how to reconcile [the statute] with Arizona's existing laws").

7.      The Arizona Court of Appeals has interpreted "release" in A.R.S. § 13-3410 to include parole. In *Nichols*, the Court upheld A.R.S. § 13-3410 in a constitutional challenge under *Apprendi*. 201 Ariz. at 235 ¶ 1. In doing so, the Court described the sentence enhancement under A.R.S. § 13-3410 as "life imprisonment with no possibility of parole for [25] years." *Id.* This is, at a minimum, "a datum for ascertaining state law" for purposes of A.R.S. § 13-3410. *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1069 (9th Cir. 2020) (citation omitted).

8.      Arizona courts apply the "rule of lenity" to resolve "any doubt about statutory construction . . . in favor of a [criminal] defendant." *State v. Story*, 206 Ariz. 47, 51 ¶ 15 (App. 2003); *see also, e.g.*, *State v. Ovind*, 186 Ariz. 475, 478 (App. 1996) (applying the rule of lenity). If the seven points above do not definitively establish that "release" in A.R.S. § 13-3410(B) includes parole and community supervision, then this Court should apply the rule of lenity.

**B.      Mr. Huggins's sentence of imprisonment authorizes his release on parole on Count 2 or, in the alternative, requires his release on community supervision.**

Mr. Huggins is also eligible for parole on Count 2 or, in the alternative, entitled to community supervision under his sentence of imprisonment. Again: Both parole and community supervision are forms of "release." Arizona courts interpret "a criminal sentence with the goal of giving effect to the sentencing court's intent." *Chaparro*, 248 Ariz. at 140 ¶ 8. And now that the time for anyone to appeal Mr. Huggins's sentence on Count 2 has passed, that sentence is "final and enforceable"—meaning that courts lack jurisdiction to amend it. *Id.* at 142 ¶¶ 18, 19.

It is evident that the Gila County Superior Court intended to confer parole eligibility on Mr. Huggins under Count 2 or, in the alternative, to grant him community supervision.

1.      The Court ordered "AS TO EACH SENTENCE," including the sentence on Count 2, that Mr. Huggins is "subject to community supervision for a period of time" set out in A.R.S. § 13-603(I). [SOF ¶¶ 9-10] The Court thus specified the form of "release" to which Mr. Huggins is entitled. The Court must have intended for Mr. Huggins to start serving his consecutive

sentence on Count 7 after he served 25 years in prison on Count 2. *See* A.R.S. § 41-1604.07(J) (the ADCRR Director "shall authorize the release of any prisoner on the prisoner's earned release credit date to serve any consecutive term imposed on the prisoner."). Otherwise, the Court's community supervision order on Count 2 would be pointless.

2.    The Court's other orders also show that the Court intended for "release" in the sentence on Count 2 to provide a meaningful chance at release through parole or community supervision. Mr. Huggins's duty to pay fines starts "on the first day of the second month after his release" from ADCRR's custody. [SOF ¶ 10] In ordering Mr. Huggins to avoid illegal drugs, the Court said that Mr. Huggins cannot possess drugs "on his person, nor in his vehicle or home." [*Id.*] This tracks the Court's statements at Mr. Huggins's sentencing. There, the Court explained: "When you are released, you will not be permitted to use drugs unless authorized by a physician." [*Id.*] And the Court directed ADCRR to notify the Clerk of the Court of Mr. Huggins's "release date" and "mailing address." [*Id.*] If Mr. Huggins moves, then he must notify the Clerk of his "change of address." [*Id.*] Every one of these orders contemplates that Mr. Huggins will be released from ADCRR's custody. In contrast, there is no evidence that the Court intended for "release" to include only "an ad hoc exercise of executive clemency." *Solem*, 463 U.S. at 301.

3.    This interpretation is bolstered by the Gila County Probation Department's presentence report. That report recommended that Mr. Huggins be ordered to serve "the term of 25 years" in prison on Count 2. [SOF ¶ 8] That would allow Mr. Huggins to start serving his consecutive sentence on Count 7 after he served 25 years in prison on Count 2.

4.    When the Court sentenced Mr. Huggins, and for many years after, Arizona courts regularly "interchangeably used the words 'parole' and 'release' when imposing non-natural-life sentences." *Anderson*, 257 Ariz. at 231 ¶ 17. This reflected their belief that the words meant the same thing. Especially given the evidence above, the Court must have intended for "release" in the sentence on Count 2 to include parole and community supervision, so that Mr. Huggins would have a meaningful chance at release. *See, e.g.*, *Viramontes v. Ryan*, No. CV-16-00151,

2019 WL 568944, at *8 n.9 (D. Ariz. Feb. 12, 2019) ("It is immaterial that [the defendant] was sentenced to life with the possibility of 'release,' whereas the defendants in *Anderson* and *Shine* were sentenced to life with the possibility of 'parole.' As explained in this Order, the record strongly indicates the trial court believed that the sentence imposed carried parole eligibility after 25 years. That some defendants . . . received 'parole' sentences while others . . . received 'release' sentences shows only that the synonymizing of 'parole' with 'release' was a common error.").

*    *    *

To sum up, Mr. Huggins is eligible for parole on Count 2 or, in the alternative, entitled to community supervision. Both parole and community supervision are forms of "release" under A.R.S. § 13-3410(B) and Mr. Huggins's sentence of imprisonment.

## II.    Director Thornell is violating Mr. Huggins's due process rights.

### A.    Count I: Procedural Due Process

To evaluate a procedural due process claim, this Court "engage[s] in a two-step analysis: First, [it] determine[s] whether the inmate was deprived of a constitutionally protected liberty or property interest. Second, [it] examine[s] whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022).

#### 1.    Mr. Huggins has constitutionally protected liberty or property interests.

Mr. Huggins's sentence is "final and enforceable." *Chaparro*, 248 Ariz. at 142 ¶ 18. He has a constitutionally protected liberty interest in freedom from detention that is implicated when Director Thornell interprets and implements final and enforceable criminal sentences. And in any case, Mr. Huggins has state-created constitutionally protected liberty or property interests in parole-eligibility certification or, in the alternative, community supervision.

**Liberty Interests.** "A liberty interest 'may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies.'" *Johnson*, 55 F.4th at 1180 (citation omitted). When analyzing whether there is a state-created liberty interest, this Court generally looks to "the nature of the deprivation to determine if the state has created some

- 15 -

'underlying substantive interest' that rises to the level of a legitimate claim of entitlement." *Id.* at 1193 (citation omitted). In this context, this Court also considers whether state statutes include "mandatory language" that creates a legitimate expectation entitled to protection under the Due Process Clause. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373-74 (1987); *see also, e.g., Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979) (similar).[4]

**Property Interests.** "Due process protects property interests 'well beyond actual ownership of real estate, chattels, or money.'" *Redd v. Guerrero*, 84 F.4th 874, 893 (9th Cir. 2023) (citation omitted). "The hallmark of property . . . is an individualized entitlement grounded in state law." *Id.* (citation omitted). To determine whether such an individualized entitlement exists, this Court looks to "the language of the [relevant] statute[s] and the extent to which the entitlement is couched in mandatory terms." *Id.* (citation omitted).

To start, Mr. Huggins has a liberty interest arising from the Constitution itself. "The general liberty interest in freedom from detention is perhaps the most fundamental interest that the Due Process Clause protects." *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019). This interest implicates "the Due Process Clause not only when a jury convicts [a criminal defendant] or when a court initially sentences him, but also when prison officials interpret and implement the sentence that the trial court has imposed." *Id.* at 142. Thus, no matter whether prison officials' "course of conduct is legally justified (or perhaps even legally required), their decision to implement [a prisoner's] sentence in a manner that diverge[s] from the sentence pronounced by the sentencing court implicate[s] a liberty interest of the highest order." *Id.*; *see also, e.g., Matzell v. Annucci*, 64 F.4th 425, 431-37 (2d Cir. 2023) (prison officials' decision to disqualify a prisoner

---

[4] This "mandatory language" analysis retains "continuing vitality in cases concerning prisoners' state-created liberty interest in parole." *Chappell v. Mandeville*, 706 F.3d 1052, 1064 n.5 (9th Cir. 2013). Mr. Huggins does not claim a state-created liberty interest in parole itself; rather, this case involves Director Thornell's duty to certify Mr. Huggins as eligible for parole. But this analysis is still instructive. And at any rate, this case also involves Mr. Huggins's entitlement to community supervision. ADCRR admitted that the difference between parole and community supervision is mere "semantics" as applied to life sentences. [SOF ¶¶ 3-4]

from enrolling in a bootcamp program "diverged from the sentencing court's order" authorizing the prisoner's enrollment and thus "implicated [the prisoner's] liberty interest in having his sentence implemented in a manner consistent with law and the sentencing court's order").

Beyond that, Mr. Huggins also has state-created liberty or property interests in parole-eligibility certification or, in the alternative, community supervision. As the chart below demonstrates, Arizona's parole and community supervision statutes repeatedly use mandatory language and specifically require that Director Thornell (a) certify parole-eligible prisoners as parole eligible and (b) implement prisoners' entitlement to community supervision.

| Parole (A.R.S. § 41-1604.09) | Community Supervision (A.R.S. § 41-1604.07) |
|---|---|
| "The director *shall* develop and maintain a parole eligibility classification system." (A). | "A prisoner who has reached the prisoner's earned release date or sentence expiration date *shall* be released to begin the prisoner's term of community supervision . . ." (E). |
| "The director *shall* establish rules . . . for the classification and certification of prisoners for purposes of parole." (B). | ADCRR "*shall* establish conditions of community supervision . . ." (G). |
| "The director *shall* certify as eligible for parole any prisoner classified within an eligible classification five months immediately before the prisoner's earliest parole eligibility." (D). | "The director . . . *shall* authorize the release of any prisoner on the prisoner's earned release credit date to serve any consecutive term imposed on the prisoner." (J). |

Given that Mr. Huggins is eligible for parole on Count 2 or, in the alternative, entitled to community supervision, he has an individualized and legitimate expectation, interest, and entitlement under these statutes to parole-eligibility certification or, in the alternative, community supervision. *See, e.g.*, *Allen*, 482 U.S. at 377-81 (Montana's parole statutes created "a liberty interest protected by the Due Process Clause"); *Greenholtz*, 442 U.S. at 11-21 (same for Nebraska); *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (same for California); *Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991) (same for Guam); *Stewart v. Ariz. Bd. of Pardons & Paroles*, 156 Ariz. 538, 542-43 (App. 1988) (same for Arizona); *see also Wolff v.*

*McDonnell*, 418 U.S. 539, 557 (1974) (a prisoner's interest in good-time credits under state statutes has "real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to [ensure] that the state-created right is not arbitrarily abrogated"); *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1985) (similar; when a state "creates a statutory right to release from prison, [it] also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated").

### 2. Director Thornell is depriving Mr. Huggins of his constitutionally protected liberty or property interests with no process.

Having established that Mr. Huggins has constitutionally protected liberty or property interests, the question becomes: "[W]hat process is due?" *McQuillion*, 306 F.3d at 903-04 (citation omitted). The answer lies in Arizona's parole and community supervision statutes. Director Thornell must certify Mr. Huggins as eligible for parole or implement his entitlement to community supervision on Count 2, so that he can serve his consecutive sentence on Count 7.

Mr. Huggins's sentence is "final and enforceable." *Chaparro*, 248 Ariz. at 142 ¶ 18. He has served over 25 years in prison under his sentence on Count 2. [SOF ¶ 18] He is thus eligible for "release"—meaning that he is eligible for parole or, in the alternative, entitled to community supervision. But Director Thornell refuses to certify Mr. Huggins as eligible for parole and refuses to implement his entitlement to community supervision. [*Id.* ¶ 19] This deprives Mr. Huggins of his constitutionally protected liberty or property interests with no process.

*Haygood v. Younger* is on point. Mr. Haygood "served most of his time in custody executing sentences pronounced by courts exercising the essence of due process of law." 769 F.2d at 1357. But there was an "ambiguity" in California sentencing statutes that led to a dispute between Mr. Haygood and prison officials about Mr. Haygood's correct release date. *Id.* at 1352-53. A court eventually decided that the prison officials' determination was "incorrect," but only after Mr. Haygood had served "time in custody after his correct release date had passed." *Id.* at 1357-58. "Whether this behavior on the part of his keepers was negligent or intentional, [Mr.

Haygood's] keepers knew that he was protesting his retention in custody." *Id.* at 1358. The prison officials simply and wrongly "believed that their understanding of the statutes was superior to his." *Id.* A "denial of due process occurred when state officers, through established interpretations of the regulations for setting release dates, without affording [Mr. Haygood] an opportunity to be heard, chose to extend his custodial period." *Id.* The Ninth Circuit thus held that Mr. Haygood had stated a claim for a "denial of liberty without due process of law." *Id.*

Director Thornell is violating Mr. Huggins's due process rights in the same way. "Clear as day," Director Thornell cannot ignore, rewrite, or defy criminal sentences imposed by courts. *Hicks v. LeBlanc*, 81 F.4th 497, 504 (5th Cir. 2023); *see also, e.g.*, *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460, 464 (1936) ("The only sentence known to the law is the sentence or judgment entered upon the records of the court."). Just like he cannot "hold an inmate without the legal authority to do so," he also cannot refuse to certify parole-eligible prisoners as parole eligible or refuse to implement prisoners' entitlement to community supervision, for that would "deprive" a person of his liberty or property "without due process of law." *Hicks*, 81 F.4th at 504 (citation omitted); *see also, e.g.*, *Francis*, 942 F.3d at 141-47 (prison officials violated the Due Process Clause by "declining to implement one aspect of a sentence on the ground that state law did not authorize it," and so the prisoner's "sentence as implemented by the [prison officials] diverged from the sentence originally pronounced by the sentencing court"; "the Due Process Clause required them to provide certain procedural protections to safeguard [the prisoner's] liberty interest in avoiding future incarceration"); *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990) (similar; "reaffirm[ing]" *Haygood*'s holding that prison officials cannot "stand by idly after [a prisoner] has raised the prospect" that the officials are wrongly calculating his sentence); *Hudson v. Broomfield*, No. 21-06747, 2021 WL 6117932, at *2 & n.1 (N.D. Cal. Dec. 27, 2021) (a prisoner stated a due process claim when he was "eligible for parole consideration" under an amendment to California's Constitution that made "parole more available" for prisoners because, if successful, "he would only be entitled to a parole hearing that comports with due process").

1    This Court should grant Mr. Huggins summary judgment on this claim.

2    **B.    Count II: Substantive Due Process**

3    "Substantive due process forbids the government from depriving a person of life, liberty,

4    or property in such a way that shocks the conscience or interferes with the rights implicit in the

5    concept of ordered liberty." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (citations

6    omitted). "A threshold requirement" for any substantive due process claim is therefore "the

7    plaintiff's showing of a liberty or property interest protected by the Constitution." *Dittman v.*

8    *California*, 191 F.3d 1020, 1029 (9th Cir. 1999) (citation omitted).

9    **1.    Mr. Huggins has constitutionally protected liberty or property interests.**

10   Mr. Huggins incorporates the arguments that he made in Argument § II(A)(1) here. As

11   explained above, Mr. Huggins has a constitutionally protected liberty interest in freedom from

12   detention, and he has state-created constitutionally protected liberty or property interests in

13   parole-eligibility certification or, in the alternative, community supervision.

14   **2.    Director Thornell is depriving Mr. Huggins of his constitutionally**
     **protected liberty or property interests with deliberate indifference.**

15   "Only official conduct that 'shocks the conscience' is cognizable as a due process

16   violation." *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013)

17   (citation omitted). Deliberate indifference may rise to "the conscience-shocking level" required

18   for a substantive due process violation when "the prison official had time to deliberate before

19   acting or failing to act in a deliberately indifferent manner." *Id.*

20   *Matzell v. Annucci* illustrates these principles. Mr. Matzell was sentenced to "four years'

21   imprisonment followed by three years of post-release supervision for a controlled substance

22   offense." 64 F.4th at 429. The sentencing court ordered that Mr. Matzell be enrolled in "a six-

23   month bootcamp program that, if successfully completed," would allow him to be "released from

24   prison early." *Id.* Prison officials "denied his admission" into the program. *Id.* They "repeatedly

25   refused" to enroll him—even though his sentencing order authorized it and his counsel sent them

26   letters alerting them to the statute and court order that "mandated his admission." *Id.* at 437.

The Second Circuit held that Mr. Matzell plausibly alleged a substantive due process violation because the prison officials' decision "diverged from the sentencing court's order and implicated [Mr. Matzell's] liberty interest in having his sentence implemented in a manner consistent with law and the sentencing court's order." *Id.* It also held that Mr. Matzell plausibly alleged that the prison officials' actions "rose to the level of deliberate indifference" given that they "repeatedly refused" to enroll him into the bootcamp program. *Id.* at 437-38; *see also, e.g.*, *Barnes v. Dist. of Columbia*, 793 F. Supp. 2d 260, 274-75 (D.D.C. 2011) (recognizing that overdetention can violate "the substantive component of the Due Process Clause").

So too here. ADCRR—an executive agency—has no authority to ignore, rewrite, or defy criminal sentences imposed by courts. This principle was true almost a century ago, *see, e.g.*, *Hill*, 298 U.S. at 464, and it remains true today. *See, e.g.*, *Chaparro*, 248 Ariz. at 142 ¶ 18; *Francis*, 942 F.3d at 141-42. Mr. Huggins is eligible for parole on Count 2 or, in the alternative, entitled to community supervision. He requested that Director Thornell certify him as eligible for parole or, in the alternative, implement his entitlement to community supervision, so that he can serve his consecutive sentence on Count 7. [SOF ¶ 19] And he provided "a reasonable amount of time for Director Thornell to consider this request." [*Id.*] But Director Thornell refuses to certify Mr. Huggins as eligible for parole and refuses to implement his entitlement to community supervision. [*Id.*] Director Thornell's conduct thus shocks the conscience and violates Mr. Huggins's substantive due process rights. *See, e.g.*, *Matzell*, 64 F.4th at 437-38; *Francis*, 942 F.3d at 141-47; *Haygood*, 769 F.2d at 1355-58; *Alexander*, 916 F.2d at 1398.

This Court should grant Mr. Huggins summary judgment on this claim.

### Conclusion

The Court should grant summary judgment for Mr. Huggins and require Director Thornell to implement Mr. Huggins's final and enforceable sentence by certifying him as eligible for parole on Count 2 or, in the alternative, implementing his entitlement to community supervision.

1       RESPECTFULLY SUBMITTED this 10th day of June, 2025.

2                 **COPPERSMITH BROCKELMAN PLC**

3                 By /s/ Austin C. Yost

                        Austin C. Yost

4                         Kelleen Mull

5                 **ARIZONA JUSTICE PROJECT**

                        Lindsay Herf

6

7                 **MITCHELL STEIN CAREY CHAPMAN PC**

                        Karen Singer Smith

8                 *Attorneys for Plaintiff Donald Huggins*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26