SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Huggins, | No.   CV-25-01991-PHX-ROS (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Ryan Thornell , et al., | |
| Defendants. | |

Plaintiff Donald Huggins, who was convicted by a jury of several drug crimes in 1997 and has since spent more than 25 years in the Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR), brought this civil rights action against Defendant ADCRR Director Ryan Thornell in his official capacity pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff seeks declaratory relief stating he is eligible for parole for his conviction on Count 2 and injunctive relief requiring Defendant Thornell to certify him as parole eligible on this count. (*Id.* at 25.) In the alternative, Plaintiff seeks a declaration that he is entitled to community supervision on Count 2 and an injunction requiring Defendant to implement his entitlement to community supervision. (*Id.*)

Before the Court are the following Motions: Plaintiff's Motion for Summary Judgment (Doc. 8), Defendant's Cross Motion for Summary Judgment (Doc. 30), and Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. 33.) Plaintiff's Motion for Summary Judgment is fully briefed (Docs. 30, 38), and Plaintiff responded to both of Defendant's Motions. (Docs. 38, 41.) Defendant sought and was granted additional time,

until March 27, 2026, to file replies to his Motions (Docs. 42, 43), and he has not yet done so. The Court will deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and deny as moot Defendant's Motion to Dismiss.[1]

**I.    Background**

Prior to January 1994, Arizona law permitted prisoners to obtain early release from their sentences through parole. Then, in 1993, the state legislature "revised multiple sections of Arizona's criminal and penal codes" pursuant to a "comprehensive statutory scheme known as the 'Truth in Sentencing Act.'" *Zuther v. State*, 14 P.3d 295, 299 (Ariz. 2000) (citing 1993 Ariz. Sess. Laws 255, §§ 1 through 101).[2] As part of this overhaul, the legislature amended state law to prospectively eliminate parole for all felony offenses committed on or after January 1, 1994. *See* Ariz. Rev. Stat. § 41–1604.09(I) (1994) (parole eligibility "applies *only* to persons who commit felony offenses *before* January 1, 1994") (emphases added);[3] *see also Chaparro v. Shinn*, 459 P.3d 50, 52 (Ariz. 2020) ("the Arizona Legislature amended § 41-1604.09 to eliminate parole for all offenses committed on or after January 1, 1994"); *State v. Rosario*, 987 P.2d 226, 230 (Ariz. Ct. App. 1999)

---

[1] Because the Court finds in Defendant's favor, it need not wait for Defendant's replies to his Motions.

[2] The full texts of the legislative session pertaining to the 1993 Truth in Sentencing overhaul can be accessed at Arizona Memory Project, 1993 Ariz. Sess. Laws, chapter 255, 101 (1st Reg. Sess.), available online at https://azmemory.azlibrary.gov/nodes/view/20977, beginning at p. 482 of 707. Additionally, prior mark-up versions of the relevant statutes referred to in this Order can be accessed by selecting the links to legislative history provided for the particular statute under "Credits" in *Westlaw*.

[3] The statute was subsequently amended to apply (i.e. allow parole) to a "person who is sentenced to life imprisonment and who is eligible for parole pursuant to [either] § 13-716 or 13-718." Ariz. Rev. Stat. § 41-1604.9(I)(1). A.R.S. § 13-716 pertains to juvenile offenders and was enacted in 2014 after the Supreme Court, in *Miller v. Alabama*, 567 U.S. 460 (2012), held that mandatory sentencing of juveniles to life without the possibility of parole was unconstitutional. *See State v. Vera*, 334 P.3d 754, 759 (Ariz. App. 2014). A.R.S. § 13-718 pertains to persons convicted of first-degree murder who were sentenced to life with the possibility of parole pursuant to a plea agreement.

("Because Rosario committed his crimes in March and May 1994, he is not eligible for parole").

In place of parole, the legislature authorized a system of earned release credits to be implemented by the director of the department of corrections, whereby eligible prisoners could earn time off their sentences while in custody based on criteria set by the director. *See* Ariz. Rev. Stat. § 41-1604.06; *see also Vera*, 334 P.3d at 758.  The legislature also mandated that, for every felony offense committed on or after January 1, 1994, for which a person was sentenced to a term of imprisonment, "the court at the time of sentencing shall impose . . . a term of community supervision [that] shall be served consecutively to the actual period of imprisonment."  Ariz. Rev. Stat. § 13-603(I).

Despite these changes in law, prosecutors continued to offer plea agreements that included "parole" and courts erroneously continued to impose sentences that included "parole."  *See State v. Anderson*, 547 P.3d 345, 350 (Ariz. 2024).

In 2018, the state legislature enacted Arizona Revised Statutes § 13-718 as a legislative fix to account for the fact that, "[d]espite the elimination of parole, prosecutors continued to offer parole in plea agreements, and judges continued to accept such agreements and impose sentences of life with the possibility of parole."  *Viramontes v. Att'y Gen. of Arizona*, No. CV-16-00151-TUC-RM, 2021 WL 977170, at *1 (D. Ariz. Mar. 16, 2021).  Like § 13-716, which carved out a specific exception that made parole available to juveniles sentenced to life in prison, § 13-718 made parole available to those convicted of first degree murder and sentenced to life in prison without the possibility of parole for a minimum number of calendar years pursuant to a plea agreement.[4]  The intent of the amendment was to "honor[] those plea agreements notwithstanding the elimination of parole."  *Viramontes*, 2021 WL 977170, at *1.  Despite this fix, there was no form of relief for those who received the same sentence following a conviction at trial.  *Id.*

---

[4] Unlike § 13-718, which applies "regardless of whether the offense was committed on or after January 1, 1994," this amendment only applies retrospectively to those who were sentenced pursuant to a plea agreement "between January 1, 1994 and on or before August 3, 2018."  Ariz. Rev. Stat. § 13-718.

The question of what to do in cases where parole was improperly imposed following a jury trial remained unanswered until 2020, when the Arizona Supreme Court issued its opinion in *Chaparro v. Shinn*, 459 P.3d 50 (Ariz. 2020). In that case, the plaintiff, Abelardo Chaparro, was convicted of first-degree murder by a jury and sentenced in 1996 to "life without the possibility of parole for 25 years," but when he requested parole certification after serving 24 years in state custody, prison officials said he would never be certified. *See Chaparro v. Ryan*, No. CV-1900650-PHX-DWL (MHB), 2019 WL 3290328, at *1 (D. Ariz. July 22, 2019). Chaparro sued in federal court, and upon finding his parole eligibility hinged on a novel or unsettled question of state law, the district court certified the following question to the Arizona Supreme Court:

> Whether, in light of Arizona Revised Statutes § 41-1604.09, a person convicted of first-degree murder following a jury trial for actions that took place on or after January 1, 1994, is eligible for parole after 25 years when his sentence states that he is sentenced to "life without possibility of parole for 25 years."

*Id.* at *6. The Arizona Supreme Court answered in the affirmative, holding that "a sentence imposing 'life without possibility of parole for 25 years' means the convicted defendant is eligible for parole after serving 25 years' imprisonment despite § 41-1604.09's prohibition of parole for persons convicted of offenses occurring on or after January 1, 1994." *Chaparro*, 459 P.3d at 53−54. The court also found that, even though Chaparro received an illegally lenient sentence, the sentence was final and enforceable, so Chaparro was eligible for parole. *Id.* at 54 (citing *Dawson*, 792 P.2d 741, 749 (Ariz. 1990) (illegally lenient sentences are final under Arizona law absent timely appeal or post-judgment motion)).

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying

those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   Facts

### A.   Plaintiff's Convictions and Sentencing

In 1997, following a jury trial in the Gila County Superior Court, Plaintiff was convicted on felony charges in two cases: CR 96-057 and CR 96-091. (Doc. 11, Plaintiff's Statement of Facts (PSOF) ¶ 7; Doc. 32, Def.'s Statement of Facts (DSOF) ¶ 9; Doc 11-1 at 75−80.) In CR 96-057, Plaintiff was convicted of four offenses, including in Count 2, Transfer of a Narcotic Drug (Cocaine), in violation of A.R.S. § 13-3408(A)(7), committed on or about July 7, 1995, and in Count 7, Manslaughter, in violation of A.R.S. §§ 13-

1103(A)(1), committed on or about July 7, 1995.  (DSOF ¶ 10; Doc. 11-1 at 78, 80.)  Count 2 was charged as a Serious Drug Offense under A.R.S. § 13- 3410(B), and the trial court entered a finding that the elements necessary for the enhanced sentence mandated by that statute had been proven.  (DSOF ¶ 11.)

As relevant here, on June 19, 1997, the trial court sentenced Plaintiff on Count 2 to "DEPARTMENT OF CORRECTIONS, LIFE WITH NO RELEASE UNTIL DEFENDANT HAS SERVED 25 YEARS, unless sentence is commuted."  (PSOF ¶ 9; Doc. 11-1 at 78.)   The court sentenced Plaintiff on Count 7 to "DEPARTMENT OF CORRECTIONS, 5 YEARS, PRISON."  (Doc. 11-1 at 80.)

The court ordered that Plaintiff's sentence in Count 2 run concurrent with his sentences in Counts 1 and 4 in CR-96-091 but consecutive to Plaintiff's sentences in Counts 3 and 5 in CR-96-091; it further ordered that the sentence in Count 7 run consecutive to Plaintiff's sentence for Count 2 (i.e., after Plaintiff served his sentences on Counts 3 and 5 in CR-96-091, his sentence in Count 2 in CR 96-057 could begin, and after he served his sentence on that count, his sentence in Count 7 in CR 96-057 could begin). (*Id.* at 78, 80.)  The Court also ordered as to each sentence that, "after Defendant is released from custody[,] he will be subject to community supervision for a period of time as set forth in A.R.S. §§ 13-603(I)."  (*Id.* at 80.)   The court also imposed fines and other requirements, such as refraining from drugs and notifying the clerk of court of changes of address, that would apply after release.  (PSOF ¶ 10.)

Additionally, as to Count 2, the Court made findings pursuant to Arizona Revised Statutes §13-603(K) (now codified as § 13-603(L)) that "the sentence required by law herein is *clearly excessive*," and it ordered that Plaintiff "may petition the Board of Executive Clemency for a commutation of sentence within ninety (90) days after [he] is committed to the custody of the Arizona Department of Corrections."  (*Id.* at 78−79 (emphasis in original.))  The court also issued a minute entry, titled "SPECIAL FINDINGS PER A.R.S. §13-603(K)," enumerating its "reasons for concluding that a sentence of life imprisonment without release until [Plaintiff] has served [25] years is clearly excessive."

(*Id.* at 114−16.)  These included, among other things, that (1) a juror expressed her belief, purportedly shared by other jurors, that Plaintiff's conduct as compared to that of the witnesses who testified against him "was the same or similar[,] yet his sentence is grossly more harsh"; (2) many of Plaintiff's immediate associates who testified at trial and also dealt in drugs, "universally received guarantees of probation (or less) or a judge with sentencing discretion granted them probation"; and (3) there was no evidence Plaintiff lived extravagantly or amassed any wealth from dealing drugs; instead, his lifestyle "was the same or similar to that of the others who, at trial, admitted dealing drugs and who received probation or less." (*Id.* at 14−15.)

### B.    Plaintiff's Incarceration and Post Conviction Proceedings

On October 1, 1997, after entering ADCRR custody, Plaintiff appeared before the Arizona Board of Executive Clemency (ABOEC) pursuant to the trial court's order permitting him to seek commutation of his sentence on Count 2 on the ground that it was clearly excessive, but the board denied his application.  (PSOF ¶ 15; DSOF ¶ 21.)

In 1998, Plaintiff filed a direct appeal with the Arizona Court of Appeals to have his trial court conviction overturned, and in a February 9, 1999 Memorandum Decision, the Arizona Court of Appeals denied his appeal.  (DSOF ¶ 22.)

Meanwhile, on September 1, 1998, Plaintiff's sentence in Count 2 to "life with no release until defendant has served 25 years" began to run.  (PSOF ¶ 12; DSOF ¶ 14.)

In 2002, Plaintiff sought post-conviction relief (PCR) under Rule 32 of the Arizona Rules of Criminal Procedure, arguing his sentence in Count 2 was cruel and unusual under the Eighth Amendment, and the trial court denied relief.  (DSOF ¶ 24.)

In 2007, after Plaintiff was granted leave to file an amended PCR petition, the trial court held an evidentiary hearing on Plaintiff's amended petition and again denied relief. (*Id.* ¶¶ 25−26.)  Plaintiff then filed a Petition for Review with the Arizona Court of Appeals, and the appellate court granted review but ultimately denied relief.  (*Id.* ¶ 26.)

On December 23, 2013, Plaintiff filed a state petition for writ of habeas corpus, and his habeas petition was also denied.  (*Id.* ¶ 28.)

In 2016, Plaintiff submitted another application for commutation with the ABOEC, seeking to have his two remaining sentences on Counts 2 and 7 commuted, and the board voted at Phase I to pass Plaintiff's application to Phase II and held a hearing.  (*Id.* ¶ 29.) Plaintiff appeared at the Phase II hearing, but the board ultimately found him ineligible for relief.  (*Id.* ¶¶ 30−32.)  The board explained in a letter that

> Pursuant to ARS § 13-3410, "an inmate must serve 25 years of his or her sentence before he/she is eligible to apply for a reduction of sentence."  According to your sentencing information and the Arizona Department of Corrections, you will not be eligible for consideration until after August 31, 2023.

(Doc. 11-1 at 118.)[5]

On August 14, 2023, Plaintiff filed another PCR petition, this time arguing for the first time that his sentence in Count 2 was a "flat time" sentence of 25 years, which he said expired on August 25, 2023; based on this premise, he argued that "ADCRR has acted

---

[5] Plaintiff was sentenced under A.R.S. § 13-3410(B), which states,

> A person . . . who stands convicted of a serious drug offense and who committed the offense as part of the person's association with and participation in the conduct of an enterprise . . . which is engaged in dealing in substances controlled by this chapter, and who organized, managed, directed, supervised or financed the enterprise with the intent to promote or further its criminal objectives, shall be sentenced to life imprisonment and *is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis* until the person has served not less than twenty-five years *or* the sentence is commuted.

Ariz. Rev. Stat. § 13-3410(B) (emphasis added).  The board did not explain why Plaintiff had to serve a minimum of 25 years before being eligible for commutation, which, based on the statute's use of the disjunctive "or" in the sentence "until the person has served not less than twenty-five years *or the sentence is commuted*," appears to recognize commutation as an alternative means of release that, notwithstanding the other provisions in the statute, can apply at any time.

Arbitrar[il]y, Capriciously, and in Excess of its Jurisdiction and authority" by failing to release him after 25 years. (DSOF ¶ 37; Doc. 32-1 at 123−24.) Plaintiff also argued that Defendant Thornell had violated his due process rights by effectively modifying his sentence to a life sentence without possibility of release and had violated his equal protection rights by treating him differently from other, similarly situated prisoners whose sentences provided for "release or parole eligibility after 25 years." (PSOF ¶ 37; Doc. 32-1 at 127−28.) Plaintiff also argued that the trial court erred by failing to set forth on the record its reasons why the sentences for Counts 2 and 7 should be consecutive, as he claimed was required by Arizona Revised Statutes § 13-708 (now § 13-711) and that, absent such justifications, the sentences must run concurrently. (Doc. 32-1 at 131.)

On December 21, 2023, the Gila County Superior Court denied Plaintiff's PCR petition, and on February 2, 2024, it denied his Motion for Rehearing. (DSOF ¶ 40; Doc. 32-1 at 145−47.) In its order denying the PCR petition, the court corrected Plaintiff's misunderstanding of § 13-708, which states in relevant part, "sentences imposed by the court *shall run consecutively unless the court expressly directs otherwise*, in which case the court shall set forth on the record the reason for its sentence." (Doc. 32-1 at 145 (emphasis added).) Because consecutive sentences are the norm under the statute, and only non-consecutive sentences require justification, the court found that imposing consecutive sentences on Plaintiff did not require the court to set forth specific reasons for doing so. (*Id.*) The court further found that, because Plaintiff had to serve consecutive sentences, ADCRR "has not illegally modified [Plaintiff's] sentence and held [Plaintiff] after the expiration of his sentence." (*Id.*)

On September 1, 2023, after he had served 25 years in prison on Count 2, Plaintiff again applied for commutation of his sentence, and the ABOEC again denied his application, this time without passing it to Phase II for a hearing. (PSOF ¶ 17; DSOF ¶¶ 33−35.)

## C.    Plaintiff's Request for Parole

ADCRR Department Order (DO) 1002, *Inmate Release Eligibility System*, § 1.2

provides that "Inmates with a date of offense on or after January 1, 1994 shall not be eligible for:

> 1.2.1 Parole. With the exception of those inmates who were sentenced to Life with a minimum number of years to serve (e.g., 25 or 35 years) and are eligible pursuant to Arizona Revised Statutes (A.R.S.) §13-716, §13-718 and by the *Chaparro* decision. Inmates with a Natural Life Sentence are not eligible, unless otherwise permitted per statute.

Section 1.2 further states that such prisoners shall not be eligible for work furlough, home arrest, provisional release, or mandatory release. (*Id*. §§ 1.2.2−1.2.5.)

For prisoners with flat sentences, § 1.15.1 states, "[i]nmates with a date of offense on/after January 1, 1994 shall be released on the SED [sentence expiration date] to begin serving the Community Supervision term imposed by the court or begin serving any consecutive sentence imposed."

For prisoners whose statutory offense allows them to earn release credits, § 8.12 states, "[i]nmates with a date of offense on or after August 13, 1986 shall be considered for an ERCD (earned release credit date)," and it sets forth the criteria for such consideration. Section 8.12.9 states, "[a]n inmate, with a date of offense on or after January 1, 1994, who has reached the ERCD, shall be released to begin Community Supervision or begin serving any consecutive sentence imposed."

On April 29, 2025, Plaintiff sent a letter through counsel, requesting that Defendant Thornell certify him as parole eligible or, in the alternative, "implement his entitlement to community supervision," and Defendant refused to do so. (PSOF ¶ 19; Doc. 1 ¶¶ 67, 79.)

On June 9, 2025, Plaintiff filed this lawsuit.

## IV.    Discussion

Plaintiff argues that because his sentence in Count 2 contemplates "release" after 25 years, which he has already served, and parole and community supervision are both forms of release, his sentence authorizes release on parole or, in the alternative, release on community supervision. (Doc. 8 at 14.) Based on this same premise in his Complaint, Plaintiff asserts both procedural and substantive due process claims. In support of his

procedural due process claim, he alleges that, by not certifying him as parole eligible or releasing him to community supervision after he served 25 years on Count 2, Defendant is depriving him of his constitutionally protected liberty interests without due process of law. (Doc. 1 at 21−23.)  As grounds for his substantive due process claim, he further alleges that Defendant's conduct is arbitrary, unreasonable, unjustified, and deliberately indifferent to those rights and therefore shocks the conscience.  (Doc. 1 at 21−25.)

Defendant argues that, to the extent Plaintiff seeks parole certification, his due process claims fail as a matter of law because he has not shown he is entitled to parole or that Defendant has acted in such a way that shocks the conscience.  (Doc. 30 at 14, 18−24.) Defendant also argues that, to the extent Plaintiff seeks immediate release to community supervision, his claims fail as a matter of law because § 1983 is not a proper basis for challenging the validity of any confinement or its duration; instead, claims seeking release can only be brought via a petition for habeas corpus.  (*Id.* at 16−18.)

### A. Due Process

To prevail on a procedural due process claim, a plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 904 (9th Cir.1993)).  "The procedural guarantees of the Due Process Clause apply only when a constitutionally protected liberty or property interest is at stake."  *Nevada Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011).

"The Due Process Clause of the Fourteenth Amendment [also] embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460-61 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  "The concept of 'substantive due process' . . . forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  *Nunez v. City of Los*

*Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (internal citations omitted).  Thus, "substantive due process secures individuals from "arbitrary" government action that rises to the level of "egregious conduct," not from reasonable, though possibly erroneous, legal interpretation." *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006).

To prevail on his procedural due process claim, Plaintiff must first show a constitutionally protected liberty or property interest at stake.  *Nevada Dep't of Corrs.*, 648 F.3d at 1019.  As to Plaintiff's request for parole eligibility certification, the bedrock issue is whether Plaintiff's sentence to "life with no release until defendant has served 25 years," means Plaintiff became parole eligible after serving 25 years, thereby conferring on him a liberty interest under Arizona law to seek parole.  If the answer is yes, Plaintiff can show a constitutionally protected liberty interest at stake.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (internal citations omitted) ("A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies"); *Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991) ("A prisoner has no federal constitutional right to parole. . . . [however, a] protected liberty interest may be created by statutes, administrative regulations, or published prison policy, rules, and regulations") (internal citations omitted).

Plaintiff argues at length that, notwithstanding the State's elimination of parole for offenses committed on or after January 1, 1994, the Court should broadly interpret both A.R.S § 13-3410(B)—the statute underlying Plaintiff's enhanced sentence in Count 2— and Plaintiff's sentence, itself, as making Plaintiff parole eligible after 25 years.  (Doc. 8 at 8−16.)  Plaintiff's arguments hinge on the fact that both § 13-3410(B) and Plaintiff's sentence include the term "release," which Plaintiff argues necessarily includes parole and/or community supervision.

Specifically, § 13-3410(B) includes the word "release" in its mandate that a person sentenced under that statute "shall be sentenced to life imprisonment and is not eligible for suspension of sentence, probation, pardon *or release from confinement on any basis* until the person has served not less than twenty-five years or the  sentence is commuted."

(emphasis added).  Plaintiff argues based on principles of statutory interpretation that the only way to give proper effect to the term "release" in § 13-3410(B) is to read it as "cover[ing] any unlisted supervised release forms that are like the listed term 'probation' (including parole and community supervision)."  (Doc. 8 at 9.)

The problem with this argument is that reading the term "parole" into the statute is wholly unnecessary to make sense of the meaning of the phrase "or release from confinement on any basis."  By its plain meaning, this phrase is simply a catch-all phrase that broadly eliminates any available form of release prior to 25 years that is not already listed in the statute, not a means of creating new forms of release that are not otherwise authorized by Arizona law.  To create a protected liberty interest "[t]he statute or regulation must use specific, mandatory language," *Bermudez v. Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991), which is not in evidence here.

More fundamentally, there is no way to read § 13-3410(B) as contemplating the possibility of parole after 25 years without running afoul of Arizona's Truth in Sentencing laws, by which the state legislature expressly eliminated the possibility of parole for offenses committed on or after January 1, 1994, as applies to Plaintiff's criminal offense in Count 2.  Most notably, § 13-3410(B) was itself amended during that same legislative session, and the legislature expressly eliminated the word "parole" from that provision.[6] This does not show the State intended to include parole as an option for release after 25 years in § 13-3410(B).  Plaintiff's statutory interpretation arguments to the contrary fail to show Plaintiff has a constitutionally protected interest in parole under Arizona law.

Plaintiff makes similar arguments based on his sentencing order on Count 2.  He argues that, because the trial court sentenced him to "life with no *release* until [he] has served 25 years," the only way to give proper effect to the court's intent is to read the sentence as "provid[ing] a meaningful chance at release through parole or community supervision."  (*Id.* at 14−15.)  To bolster this argument, Plaintiff points to the trial court's

---

[6] It also eliminated "work furlough."  *See* CRIMINAL CODE REVISION, 1993 Ariz. Legis. Serv. Ch. 255 (S.B. 1049) (WEST).

imposition of community supervision in Count 2, in addition to its orders that Plaintiff pay fines and abide by other restrictions, such as that he avoid illegal drugs and keep the court apprised of his address, all of which only take effect *after* release.  (*Id.*)  Plaintiff argues that "every one of these orders contemplates that Mr. Huggins will be released from ADCRR's custody."  (*Id.*)  Plaintiff also relies on the well-documented tendency of courts to refer to "parole" and "release" interchangeably, even after the State eliminated parole, as a reason to infer that, as applied here, the word "release" effectively means "parole."  (*Id.* at 15−16 (citing *Viramontes*, 2019 WL 568944, at *8, n.9 (D. Ariz. Feb. 12, 2019)).

As a preliminary matter, the Court agrees, based on the Arizona Supreme Court's certified question answer in *Chaparro*, that even though phrased in the negative, Plaintiff's sentence in Count 2 to "life with no release until [Plaintiff] has served 25 years" means the trial court intended Plaintiff to be eligible for some form of release after 25 years.  In *Chaparro*, the trial court amended Chaparro's sentence, which originally contained the words "natural life," to "[l]ife without possibility of parole for 25 years," and the Arizona Supreme Court found that, even though the phrasing did not affirmatively say what would happen after 25 years, "the only reasonable inference" from this change was that the trial court intended "to indicate that after 25 years Chaparro would be eligible for parole."  459 P.3d at 53.  The court cited in support to its finding in *State v. Cruz-Mata*, as showing that "before 1994[,] a 'life sentence without possibility of parole for 25 years' meant that the 'minimum term of imprisonment is 25 years [minus credit for pre-sentence custody] before he is eligible for parole.'"  *Id.* (quoting *Cruz-Mata*, 674 P.2d 1368 (Ariz. 1983)).

But inferring from the similar construction of Plaintiff's sentence here that "life with no release until [Plaintiff] has served 25 years" means the trial court intended Plaintiff to become eligible for some form of release after 25 years does not mean Plaintiff has a constitutionally protected liberty interest in parole.  The Court is not persuaded that just because, broadly speaking, parole is a form of release, any use of the term "release" in the criminal sentencing context means parole.  Instead, parole is a specific kind of release that carries distinct legal significance under Arizona law.  *See Chaparro*, 459 P.3d at 54 ("the

meaning of 'parole' is not ambiguous or synonymous with other forms of release"). And unlike in *Chaparro*, in which the trial court expressly used the word "parole," thereby creating an unlawfully lenient sentence, the trial court in this case did not do so. *See also State v. Crago*, No. 2 CA-CR 2021-0011-PR, 2021 WL 1149106, at \*4 (Ariz. Ct. App. Mar. 25, 2021) (unreported) ("Unlike in *Chaparro*, the court did not mention parole. We thus fail to see how the fact-specific inquiry in *Chaparro* constitutes a significant change in the law that would probably affect Crago's sentence)."[7] Plaintiff reasonably argues that construing "release" to mean "parole" in this context is the only way to give meaningful effect to the term release. (Doc. 8 at 8, 14−15.) But even if this is so, there is no evidence the trial court ever contemplated parole, which it never mentioned, and which, at the time of Plaintiff's June 1997 sentencing, had not been available under Arizona law for more than three years.

More importantly, Arizona courts that have addressed similarly worded criminal sentences, beginning in 2014 with *Vera*, 334 P.3d 754, have not adopted the interpretation Plaintiff urges the Court to take here. In *Vera*, a PCR petitioner, Ronnie Vera, who was a juvenile at the time of his 1995 criminal offenses, petitioned the trial court for resentencing, arguing that, with the elimination of parole, his sentence to "life without parole for twenty-five (25) years," was unconstitutional under *Miller*, 567 U.S. at 479, which held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Vera*, 334 P.3d at 756. The trial court agreed, finding

---

[7] In the Ninth Circuit, citation to unpublished cases from state courts is permissible for instructive purposes when examining questions of state law. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943, n4 (9th Cir. 1997) (noting in the context of a disputed California statute, "we are not precluded from considering unpublished state court opinions"); *see also* AZ ST S CT Rule 111(c)(1)(C) (memorandum decisions of Arizona state courts are not precedential," but they may be cited "for persuasive value . . . if it was issued on or after January 1, 2015; no opinion adequately addresses the issue before the court; and the citation is not to a depublished opinion or a depublished portion of an opinion").

that "the abolition of parole by the legislature essentially made the life sentence [without parole] mandatory." *Id.* The trial court granted the PCR petition and scheduled the case for resentencing, but the Arizona Court of Appeals subsequently reversed because, by then, the Arizona legislature had enacted § 13-716, which the court found "provided Vera and similarly situated prisoners an opportunity for parole, consistent with the 'meaningful opportunity' for release contemplated by *Miller*. *Id.* at 756, 761. Importantly, for purposes of Plaintiff's case, the Arizona Court of Appeals found that, following the Arizona legislature's elimination of parole, a sentence of life without the possibility of parole after a term of years necessarily meant, as Vera claimed, that "his 'only possibility of release after 25 years [would have been] through a pardon or commutation by the governor.'" *Id.* at 760.

As noted, the Arizona legislature has since created an additional fix for "a person who was convicted of first degree murder and who was sentenced to life with the possibility of parole after serving a minimum number of calendar years pursuant to a plea agreement that contained a stipulation to parole eligibility," making such persons "eligible for parole after serving the minimum number of calendar years that is specified in the sentence." Ariz. Rev. Stat. § 13-718. Additionally, *Chaparro* extended this same fix—i.e. parole eligibility after a minimum number of years—to similarly situated prisoners who received the same sentence following trial. Plaintiff points to no legislative changes or Arizona Supreme Court or Court of Appeals rulings, however, that have found a prisoner eligible for parole, notwithstanding the State's abolition of parole, where the criminal sentence does not use the term parole, such as Plaintiff's sentence of "life with no *release* until [Plaintiff] has served 25 years." And the cases that have dealt with similarly worded criminal sentences that do not refer to parole do not support Plaintiff's position.

The Arizona Court of Appeals addressed this issue as recently as last year in *Hylton v. Shinn*, No. 1 CA-CV 24-0547, 2025 WL 1341229, at *1 (Ariz. Ct. App. May 8, 2025), *review denied* (Nov. 25, 2025) (unreported). In that case, the criminal defendant, Mortimer Hylton, was convicted by a jury in 1998 of conspiracy to commit first-degree murder under

A.R.S. § 13-1003(D) based on acts that occurred in 1997. *Id.* Section 13-1003(D), similar to § 13-3410(B) at issue here, states that the offense is "punishable by a sentence of life imprisonment *without possibility of release on any basis* until the service of twenty-five years." *See id.* at *2. At sentencing, the trial court "orally pronounced that it would 'impose a mandatory sentence of 25 years to life in prison' and that '[t]he understanding of the Court is that you must serve 25 calendar years *before you're eligible for release.*" *Id.* at *1 (emphasis added). In 2022, after serving close to 25 years, Hylton requested a release date from ADCRR, and he was told he was ineligible for parole and could only apply for commutation. *Id.* After unsuccessfully seeking special action relief in the superior court, Hylton appealed to the Arizona Court of Appeals, which also denied relief. The court reasoned,

> Although Hylton argues [his sentence] creates a "minimum sentence expiration date" of 25 years, the term of Hylton's sentence is "indeterminate life," not "25 years." *See State v. Soto-Fong*, 250 Ariz. 1, 4, 12 ¶¶ 4, 49 (2020) (noting defendant was sentenced to "consecutive life sentences" who was sentenced to "three consecutive life sentences without the possibility of release for twenty-five years"); *State v. Vera*, 235 Ariz. 571, 575 ¶¶ 15–17 (App. 2014) (statute effectively created an "indeterminate life sentence" by providing that "the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years"). . . .

> [Section 13-1003(D)] *prohibits* release *before* service of 25 years but does not create any automatic community supervision release process *after* service of 25 years. *See Chaparro v. Shinn*, 248 Ariz. 138, 142 ¶ 17 (2020) (Community supervision is not parole because "the meaning of 'parole' is not ambiguous or synonymous with other forms of release."); *Vera*, 235 Ariz. at 575 ¶ 17 (when statute provided that defendant could not be released on any basis before service of 25 years, defendant's "only possibilities for release . . . would be through a pardon or commutation by the governor" because parole is unavailable). In other words, the statute does not impose any positive obligation on the Department to begin release procedures for Hylton after service of 25 years of his sentence.

*Id.* at *2–3.

Plaintiff attempts to distinguish *Hylton* and other similar cases, including *Crago*, 2021 WL 1149106, and *State v. Brown*, No. 2 CA-CR 2025-0086, 2025 WL 1394383 (Ariz. Ct. App. May 14, 2025) (unreported) on the ground that the statutes and sentences in those cases "materially differ from the statute and sentence at issue here." (Doc. 38 at 11.) He points out that, unlike the statutes at issue in *Hylton*, *Brown*, and *Crago*, § 13-3410(B) lists pardon as a form of release and provides for release before 25 years through commutation. (*Id.*) He argues, "'release' in A.R.S. § 13-3410(B) must therefore include parole and community supervision. To hold otherwise would make 'release' in this statute . . . superfluous." (*Id.*)

This is the same statutory construction argument the Court already addressed and rejected above. As discussed, the Arizona legislature eliminated parole for crimes committed after January 1, 1994 in A.R.S. § 41–1604.09(I); at the same time, it expressly removed "parole" from the list of terms in § 13-3410(B), which applies to Plaintiff's sentence in Count 2. Absent any relevant statutory amendments or Arizona legal precedent that would make Plaintiff eligible for parole under the facts presented here, this Court has no authority to read an entitlement to parole eligibility back into Arizona law.

Plaintiff also argues that the trial court's imposition of a consecutive sentence, community supervision, and various conditions upon release call for a different conclusion from *Hylton*, *Brown*, and *Crago* because these provisions would be rendered a nullity unless his sentence is construed to confer parole eligibility after 25 years, not just "theoretical eligibility for forms of executive clemency." (Doc. 38 at 12.)[8]

---

[8] Plaintiff's supposition that the imposition of community supervision and other post-release conditions sets his case apart from those mentioned is simply incorrect. In *Hylton*, "[t]he [trial] court also ordered for both counts that Hylton 'serve one day for every seven days of the sentence imposed under the supervision of the Community Supervision Program, to be served consecutively to the actual period of imprisonment.'" 2025 WL 1341229, at *1. In *Crago*, "[t]he [trial] court also ordered that Crago was 'required to do mandatory community supervision sentence—one day for every seven days sentenced to, for a total of 3 years, 7 months.'" WL 1149106, at *1 (Ariz. Ct. App. Mar. 25, 2021).

This argument is also unpersuasive because, as the Arizona Court of Appeals found in *State v. Jenkins*, "the plain language of A.R.S. section 13–603(I), read in conjunction with the related statutes, indicates the Legislature's intent to require a term of community supervision for all prisoners, whether or not they are eligible for early release." 970 P.2d 947, 951 (Ariz. Ct. App. 1998). In addressing this requirement, *Hylton* found that

> the imposition of a term of community supervision *after* [a prisoner's] term of actual imprisonment . . . . does not require the Department to consider his suitability for release on community supervision. Under the community supervision statute, the court must impose a term of community supervision on *all* persons convicted of a felony offense whom the court sentences to a term of imprisonment. . . .
>
> Practically, if the defendant serves a life sentence, he will never serve his term of community supervision.

WL 1341229, at *3 (emphases in original). The court concluded that, "nothing in the language of the [community supervision] statute requires the Department to permit a defendant sentenced to a life sentence to serve a term of community supervision during his lifetime." *Id.*

Likewise, the trial court's compliance with its statutory obligations to impose community supervision in Plaintiff's case does not set his case apart or compel the conclusion that by referring to "release," either in Plaintiff's Count 2 sentence or elsewhere in the sentencing memoranda, the trial court imposed an unlawfully lenient sentence that made Plaintiff eligible for parole.

Because Plaintiff cannot show that either Arizona law or the trial court's sentencing memoranda created a constitutionally protected liberty interest in parole eligibility, he also cannot show that Defendant unlawfully deprived him of any such interest without due process of law. By the same token, even though freedom from bodily restraint is a core liberty interested protected by the Due Process clause, *see, e.g.*, *Foucha v. Louisiana*, 504

---

Although the Arizona Court of Appeals in *Brown* did not address all the facts of Brown's sentencing, it is almost certain the trial court in *Brown* also imposed community supervision since doing so post 1994 was statutorily required.

U.S. 71, 80 (1992), the Court cannot find that Defendant's denial of parole eligibility certification "rises to the level of 'egregious conduct,' not from reasonable, though possibly erroneous, legal interpretation." *Brittain*, 451 F.3d at 996. (9th Cir. 2006). Plaintiff's procedural and substantive due process claims based on the denial of parole eligibility certification therefore fail as a matter of law.

The Court next turns to whether Plaintiff can nonetheless show that Defendant violated his due process rights by failing to implement Plaintiff's alleged entitlement to community supervision. (Doc. 1 at 22.) Unlike parole eligibility certification, which would only entitle Plaintiff to seek potential release through parole, not provide direct release, implementing community supervision under the terms of Plaintiff's sentence in Count 2 would necessitate the termination of that sentence. Accordingly, before the Court can address whether Defendant's failure to act constitutes a due process violation, it must address whether it has jurisdiction to grant relief under § 1983 or whether, as Defendant argues, Plaintiff's exclusive remedy lies in filing a habeas petition.

### B.　Section 1983 v. Habeas

The Supreme Court has recognized that federal law "opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under 42 U.S.C. 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). Specifically, "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," whereas "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Id.*

Relying on *Muhammad* and other Supreme Court precedent, the Ninth Circuit has made clear that "habeas is the *exclusive vehicle* for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (emphasis added).

Here, Plaintiff's alternative prayer for relief is for "a declaration that Mr. Huggins is entitled to community supervision on Count 2, and an injunction requiring Director Thornell to implement Mr. Huggins's entitlement to community supervision on Count 2."

(Doc. 1 at 25.)

Under Arizona law, community supervision means "that portion of a felony sentence that is imposed by the court pursuant to § 13-603, subsection I and that is served in the community *after* completing a period of imprisonment or served in prison in accordance with § 41-1604.07." Ariz. Rev. Stat. Ann. § 13-105(5) (emphasis added). Thus, "community supervision is not equivalent to imprisonment"; instead, it "follows the term of imprisonment." *State v. Uriarte*, 981 P.2d 575, 580 (Ariz. Ct. App. 1998). Although Plaintiff does not define what it means for the Court to declare he is entitled to community supervision in Count 2 or for "Director Thornell to implement Mr. Huggins's entitlement to community supervision" on this count, practically speaking, there is no way for Defendant to give effect to these requests without making a determination that Plaintiff has completed his term of imprisonment in Count 2. Ordering Defendant to do so would necessarily require the Court to weigh in on matters pertaining to "the validity of [Plaintiff's] confinement or [the] particulars affecting its duration." *Muhammad*, 540 U.S. at 750; *Nettles*, 830 F.3d at 927. Since these matters fall within the core of habeas, Plaintiff's alternative request for relief does not sound under § 1983 and therefore fails as a matter of law.

Based on the above, the Court will deny Plaintiff's Motion for Summary Judgment, grant Defendant's Cross Motion for Summary Judgment, and deny as moot Defendant's Motion to Dismiss.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Summary Judgment (Doc. 8), Defendant's Cross Motion for Summary Judgement (Doc. 30), and Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 33).

(2) Plaintiff's Motion for Summary Judgment (Doc. 8) is **denied**, and Defendant's Cross Motion for Summary Judgment (Doc. 30) is **granted**; and Plaintiff's claims and this action are **dismissed**.

(3) Defendant's Motion to Dismiss (Doc. 33) is **denied** as moot.

(4)     The Clerk of Court must **enter judgment** accordingly.

Dated this 23rd day of March, 2026.

_____
Honorable Roslyn O. Silver
Senior United States District Judge